LILLIAN B. WECHSLER, Plaintiff, *v.* ELBECO REALTY CORPORATION and G. RICHARD DAVIS & CO., INC., Defendants.

Supreme Court, New York Special Term, July, 1922.

**Party wall — partial demolition — either owner may erect new wall on his own premises in space formerly occupied by party wall — injunction denied.**

A property owner may make changes, additions and repairs to a party wall within the limits of his own premises provided the use of the wall by the other party is not impaired.

Where it does not appear that a party wall had its origin either in contract or express grant, and the entire building on one side and the upper stories of the other building have been torn down several years previously, no easement remains for rebuilding the demolished portion of the wall, and one owner is not entitled to an injunction *pendente lite* restraining the other from building a new wall on his own premises, although it occupies part of the space formerly occupied by the demolished portion of the party wall.

Where no contract or grant is shown, the owner of one-half of a party wall has no right to prevent his neighbor from building next to his property line in the open space above the wall. No part of the new building, however, which is not also capable of use as a party wall may be rested on top of the existing party wall.

APPLICATION for injunction *pendente lite*.

*G. H. Brevillier*, for plaintiff.

*Stern, Barr & Tyler* (*Henry C. Moses*, of counsel), for defendants.

MARSH, J. This is an application for an injunction *pendente lite*. The plaintiff and defendant are the owners of adjoining properties situated on West Thirty-fifth street, near Eighth avenue, in the borough of Manhattan. On their mutual dividing line, and located partly on the premises of each, stands a party wall from eight to twelve inches in thickness which is now the west wall of the building on the plaintiff's lot. The history of its origin is not disclosed. The building formerly on the defendant's lot, of which this party wall was the east wall, was torn down a number of years ago and the defendant is now engaged in erecting

on its site a modern twelve-story building of steel construction. The plaintiff's building is constructed of brick and was formerly three or four stories in height, but the upper stories were condemned by the building department in 1918 and were removed, reducing the building to a one-story structure now vacant but recently occupied by a tenant as an automobile repair shop. For some reason which does not appear, a portion of the party wall from eight to fourteen feet in height was at that time left standing above the new roof of the plaintiff's one-story building, and when the present building operation commenced this piece of the wall was taken down by the defendant with the plaintiff's consent and upon the defendant's promise to rebuild it. The main support of defendant's new building consists of a number of steel columns which have been erected adjacent to and abutting on the westerly face of the party wall. The lower extremities of these columns extend considerably below the foundation of the party wall. This foundation consists of masonry approximately twenty inches thick, one-half being upon defendant's property and the other half upon the plaintiff's property. In order to permit the erection of the columns next to the wall, grooves or channels about three feet wide and several inches deep have been cut in some portions of this twenty-inch foundation. At the time of the commencement of this action the steel work had been erected for three stories of the new building. The plaintiff claims that some of the outside girders running along the easterly side of the building at the second and third stories project a few inches over the present top of the party wall, and that when the masonry is added the total projection will be about five inches. This is not substantially denied by the defendant and seems to be the natural result of the defendant's method of procedure. It is anticipated that the upper stories will be similar. The defendant claims, however, that the completed structure will not project beyond the actual property line and its proof in this respect is satisfactory. The plaintiff asks for an injunction restraining the defendant and its contractor during the pendency of the action from, among other things, making any further cuts or alterations in the party wall and " from placing in the said party wall, or in the space now or formerly occupied thereby, any steel column or columns, or girder or girders, and from doing in the said party wall, or in the space now or formerly occupied thereby, anything whatsoever except to repair and restore said party wall," and also for a mandatory injunction to restore the party wall to its former condition and to remove the steel columns and girders which project over or into the wall. The main question is whether the plaintiff is entitled to this relief.

Supreme Court, July, 1922.    [Vol. 119

From the affidavits, plans and photographs submitted by the respective parties I find that no permanent injury has been done through the defendant's operations to the party wall as it now stands. It has not been weakened in any respect, and in some particulars has been strengthened and improved. The situation, therefore, materially differs from that presented in *Herrman* v. *Hartwood Holding Co., Inc.*, 193 App. Div. 115, on which the plaintiff relies. Possibly an exception to this statement should be made as to certain flues, concerning which the testimony is not clear and to which reference is made hereafter. A property owner is permitted to make changes, additions and repairs to a party wall within the limits of his own premises provided the use of the wall by the other party for which it was intended is not impaired. *Eno* v. *Del Vecchio*, 4 Duer, 53; *Mittnacht* v. *Slevin*, 67 Hun, 315; affd., 142 N. Y. 683. Plaintiff's chief complaint is that the projected five-inch overhang of the defendant's building above the party wall and up to the property line will prevent her from extending the party wall upward at some time in the future. It will be noticed that she does not claim a right to extend upward indefinitely, but only in the space now or formerly occupied by the party wall. In so far as this refers to that part of the wall which was taken down under defendant's promise to rebuild she undoubtedly is entitled to fulfillment of the promise. But in so far as it refers to the entire wall before it was demolished by order of the building department, a different question is presented, one which does not seem to have been passed upon in any of the reported cases, and which requires a consideration of the nature of her party wall easement. It is not clear whether she claims the right to extend merely because of the former existence of the entire wall, or as an incident to the existence of the present one-story wall. It is important to recall that this record fails to show either a contract origin of the easement such as was involved in *Bull* v. *Burton*, 227 N. Y. 101, and in *Negus* v. *Becker*, 143 id. 303, or an express grant, as in *Douglas* v. *Coonley*, 156 id. 521.

A party wall which has fallen into a thoroughly ruinous condition may be rebuilt, if one or both of the buildings still remain standing (*Campbell* v. *Mesier*, 4 Johns. Ch. 334; *Partridge* v. *Gilbert*, 15 N. Y. 601), but if both the wall and the buildings have been wholly destroyed the easement has perished also. *Heartt* v. *Kruger*, 121 N. Y. 386. It has also been settled that if one of the owners carries the wall several stories higher, the other party has no right to complain, provided the method of construction does not weaken the wall or otherwise injure the other party and the latter has an equal right to use the addition. *Brooks* v. *Curtis*,

50 N. Y. 639; *Mittnacht* v. *Slevin, supra.* Nor has either party a right to rest on top of the party wall any new wall which is not itself capable of being used as a party wall (*Herrman* v. *Hartwood Holding Co., Inc., supra*), or do anything else to the wall which would exclude the other party from its equal use. *Hammann* v. *Jordan,* 59 N. Y. Super. Ct. Rep. 91. But these decisions seem to be far from holding that where no contract or grant is shown the owner of one-half of a one-story party wall has a right to prevent his neighbor from utilizing his property rights in the open space above. Such a result I think would be, in the language of Gray, J., in *Heartt* v. *Kruger, supra,* " a doctrine untenable and clashing with the doctrine of property rights in land." In view of modern building methods, the existence of a party wall would no longer be a mutual benefit, as held in *Hendricks* v. *Stark,* 37 N. Y. 106, but as much of a burden and incumbrance as though there were a perpetual covenant to rebuild. *O' Neil* v. *Van Tassell,* 137 N. Y. 297. The easement is referred to, in the early cases, as one for the support of the house of which the wall is a part. *Eno* v. *Del Vecchio, supra; Partridge* v. *Gilbert, supra.* It implies a house still in existence. *Kerwin* v. *Post,* 120 App. Div. 179. I believe the correct answer to the present problem is foreshadowed in the words of Denio, J., in *Partridge* v. *Gilbert, supra,* at pages 614 and 615: " As the half of the wall, standing on the land of the owner, would not alone afford the requisite support, because the whole of the arch and the entire thickness of the wall was required for that purpose, the law gave him an interest, in the nature of an easement, in the part of the wall standing on the land of the other party. This right existed as long as the wall continued to be sufficient for that purpose and the respective buildings remained in a condition to need and to enjoy that support. * * * Circumstances may have materially changed since the adjoining proprietors were content with such walls as would have supported two adjoining dwellings. If the right of mutual support continues, by means of the original arrangement, or by prescription, it is for just such an easement as was originally conceded, or which has been established by long enjoyment. But in the changing condition of our cities and villages, it must often happen, as it did actually happen in this case, that edifices of different dimensions, and an entirely different character, would be required. And it might happen, too, that the views of one of the proprietors, as to the value and extent of the new buildings, would essentially differ from those of the other; and the division wall, which would suit one of them, would be inapplicable to the objects of the other." And in *Bull* v. *Burton,* 227 N. Y. 101, 107, it is said: " When the

state of things which results in a contract for a particular party wall ceases and the right to continue an obligation for a party wall as between the owners of the adjoining property is not provided for by contract the easements terminate." I think under these authorities it makes no difference that there had originally been a higher wall, in view of the fact that the upper portion of the whole structure had been demolished several years previously with no indication of an intent to rebuild promptly.

As to that portion of the wall taken down at the commencement of the present operations, the defendant, as already stated, promised to rebuild. The precise agreement is set forth in a letter quoted in defendant's affidavits, and not denied by the plaintiff, as follows: " As further understood, we are to take down the upper portion of the party wall where it extends dangerously above the roof and replace same when we carry up our wall, making it a part of our wall, which will make it much stronger than it was before." It is a fair construction of this agreement that though the wall is to be rebuilt as part of the wall of the defendant's building, it must nevertheless be serviceable for the plaintiff's use. The plans and affidavits leave it in doubt whether this is the defendant's intention or whether they intend even at this point to hang more than a thin masonry curtain on the steel frame. The plaintiff is entitled to protection in this respect. It is also far from clear whether certain flues have been improperly closed up and whether the wall has been adequately bonded to the steel columns. The plaintiff, however, will not be injured by the continuance of the present condition pending the trial, when the rights of the parties will fully appear. The temporary structure in front of a few feet of plaintiff's premises seems to be in part a bridge approach required by the city ordinances, and in part shoring and underpinning consented to by plaintiff. Damages suffered through alleged negligent blasting and dropping of bricks during removal of the old wall are not under consideration on this motion.

The defendants will be enjoined pending the action from rebuilding that part of the old wall which was torn down by them in any way except in such manner that it can be used by the plaintiff as a party wall, and from doing anything which will interfere with such manner of rebuilding, and also from resting on top of the party wall any part of the new building which is not also capable of use as a party wall. In all other respects the motion is denied. Settle order on notice, and submit memoranda on amount of bond.

Ordered accordingly.